## UNITED STATES of America

### v.

### John A. SHORTER, Jr.

### Crim. No. 84–0421.

United States District Court,
District of Columbia.

Oct. 21, 1985.

As Amended Oct. 24, 1985.

Carol E. Bruce, Darryl W. Jackson, Asst. U.S. Attys., Washington, D.C., for Government.

---

John A. Shorter, Jr., Washington, D.C., pro se.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Defendant, an attorney appearing *pro se*, was convicted after a twenty-one day trial of one count of tax evasion and six counts of willful failure to pay income taxes. By motion filed before the verdict was rendered on Count 1, defendant moved for a mistrial as to that count and to vacate the verdict on Counts 2 through 7, on the ground of prosecutorial misconduct.

The jury began its deliberations in this case on October 3, 1985. On October 10, 1985, a partial verdict was returned, finding defendant guilty of six misdemeanor counts of willful failure to pay taxes. Five days later, on October 15, 1985, the jury returned a verdict of guilty on the one remaining count, which charged the felony of willful tax evasion. Defendant's motion is based upon the publication of news articles by the *Washington Post* on October 4, 1985, and October 11, 1985,[1] and he claims that the source of the information was the U.S. Attorney's Office.

Defendant's concern focuses on the eleventh and twelfth paragraphs of the article published on October 4, which describe the defendant's 1974 *nolo contendere* plea to a charge of failing to file a federal income tax return, his 1977 guilty plea to a charge of failure to pay District of Columbia taxes, and a 1968 civil judgment entered against him for unpaid federal taxes. Although all of this information was available on the public record at the time the article was written, it is the Court's conclusion, based upon similarities in wording, that the author of the article relied upon a description of defendant's taxpaying history that was provided by the U.S. Attorney in a

press release issued eleven months earlier, on November 1, 1984, on the occasion of defendant's indictment.[2]

Defendant contends that the November 1 press release constitutes a violation of this Court's Local Rule 1–27(c)(3), which provides:

From the time of ... the filing of a[n] ... indictment in any criminal matter until the commencement of trial ..., a lawyer ... associated with the prosecution ... shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning:

(1) The prior criminal record ... of the accused ...

The substance of Local Rule 1–27(c)(3) is identical to that of the ABA Model Code of Professional Responsibility, Disciplinary Rule 7–107(B).

The November 1 press release was issued in the interval between indictment and trial, intended to be disseminated publicly, and contained information about defendant's prior criminal record. On this basis, it would appear to violate both the Local Rules of this Court and the Model Code of Professional Responsibility issued by the American Bar Association. However, when ruling upon a defendant's motion for a mistrial and to vacate the verdicts, this Court's decision does not depend upon the propriety *per se* of the prosecution's conduct under these rules. In contrast to those bodies whose primary function it is to supervise professional conduct, the Court's principal concern is the likely impact of the disputed news coverage upon the fairness of the criminal proceedings before the Court.

---

1. *Washington Post,* October 4, 1985, at D3, Column 1; *Washington Post,* October 11, 1985, at C3, Column 3.

2. The Court made inquiry of the two Assistant U.S. Attorneys assigned to this case, and it is satisfied, based upon their representations, that

they had nothing to do with the articles in question. It may reasonably be concluded that the November 1, 1984, press release was not directly intended to influence a jury deliberating in October 1985.

Whether this fair trial issue is described as one of prosecutorial misconduct, as the defendant characterizes it, or as one of prejudicial publicity, as it might also be characterized, the standard governing the motion for a mistrial is the same: is it likely that the fairness of the proceedings has been actually prejudiced by the issuance of the government's press release and the subsequent *Washington Post* articles? *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1982) (prosecutorial misconduct); *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1974) (publicity); *United States v. DeCoster*, 624 F.2d 196, 227 (D.C.Cir.1979) (en banc) (opinion of three judges) (same); *United States ·v. Chapin*, 515 F.2d 1274, 1289 (D.C.Cir.1975) (same).

The jurors themselves are the best source for assessing whether actual prejudice has occurred. See *United States v. Haldeman*, 559 F.2d 31, 60 (D.C.Cir.1976) (defendant is obliged to demonstrate real prejudice to the jury in order to prevail on a fair trial claim and he must normally look to voir dire as the sole source of evidence of prejudice).

At defendant's request, the jurors were polled on the morning of October 15, 1985 (just prior to delivery of their verdict on Count 1) as to whether they had read the two articles in question or had heard about them. In response to the Court's query, two jurors raised their hands and were heard at the bench. One juror indicated that he had seen the headline of one of the

articles but could not remember what the headline said,[3] and that he had no knowledge of the article's contents. The other juror said that she was aware that the case had received news coverage, but had never seen or read any of it. Both jurors stressed that they had avoided learning anything about the case from news reports, in obedience to the Court's instructions. The Court found the responses of these two jurors to be completely credible.

Several other factors at work in this case suggest that it is extremely unlikely that the jury was aware of the disputed press reports.

At the outset of the trial and regularly thereafter, the Court admonished the jury to disregard any accounts of the case that might appear in the news media. On October 4, 1985, the date on which the most troublesome article appeared and when the defendant first brought this matter to the attention of the Court, the jurors again received a strongly worded instruction on their obligation to avoid news reports about the case.[4] "A crucial assumption underlying [our] system is that juries will follow the instructions given them by the trial judge." *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979). This Court has no indication whatever that this jury—which demonstrated unusual attentiveness during three weeks of trial, deliberated for six and one-half days thereafter, posed four questions of law to the Court during deliberations, and returned a partial verdict on the fifth day of their deliberations—was anything less

3. Upon further questioning, it became apparent that he had seen the headline of the October 4 article, which simply stated, "Jury Gets Noted D.C. Lawyer's Tax Evasion Case."

4. On that date, when defendant first brought the article to the Court's attention, the possibility of a jury poll was discussed among the Court and counsel, but Mr. Shorter declined to request such a poll. Instead, he asked the Honorable Louis Oberdorfer, acting on this Court's behalf, to admonish the jury to disregard any news accounts concerning the case, and a strongly worded admonishment was given. On October

7, 1985, in response to inquiries from this Court, defendant again unequivocally expressed a desire that the jury not be polled. Defendant finally filed a written motion for a poll of the jury on the afternoon of October 11, 1985, after verdicts of guilty had been returned on six counts in the indictment but before the return of the jury on Count 1. As described above, that motion was heard and a poll conducted the morning of October 15, 1985, after the jury had advised the Court that it had reached a verdict on Count 1 but before the Court received that verdict.

76

than sincere and responsible in its approach to the case and its obedience to the Court's instructions.

Prejudice from trial publicity is not to be presumed from a record barren of evidence that jurors were actually influenced unless publicity about the case has so pervaded the community as to "utterly corrupt[ ]" the trial atmosphere. *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977); *Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1974); *United States v. Ehrlichman,* 546 F.2d 910, 916 n. 8 (D.C.Cir. 1976). The two articles challenged by the defendant do not suggest that publicity has in any sense "pervaded the proceedings." *Murphy v. Florida, supra,* 421 U.S. at 799, 95 S.Ct. at 2035. The few cases in which prejudice has been presumed involved a degree of publicity that was far beyond anything alleged in this case. *See, e.g., Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (defendant's filmed confession broadcast three times by local television station).[5]

Because defendant has not presented any evidence of actual prejudice to his fair trial rights, and has not established that publicity has so pervaded the proceedings as to create actual prejudice, it is this 21st day of October, 1985

ORDERED that defendant's motion be and it is hereby denied; and it is further

ORDERED that sentence shall be imposed on December 2, 1985 at 10:00 a.m. in Courtroom No. 1.

**5.** The holding in *United States v. Coast of Maine Lobster Co.,* 538 F.2d 899 (1st Cir.1976), does not suggest a different result. The Court in *Coast of Maine Lobster Co.* ordered a new trial as a supervisory—not constitutional—matter where a prosecutor's statement that "white collar criminals get off easy" was published as a conspicuous front page headline in the local newspaper the day before deliberations began in a tax evasion case. The Court there limited its decision to cases in which a prosecutor makes a statement about the case in the course of the trial itself that receives "prominent" coverage. *Id.* at 902. Here, by contrast, the government's statement was issued eleven months before trial. Furthermore, the appearance of two articles in the local news pages of the *Washington Post* cannot be compared to the front page headline at issue in *Coast of Maine Lobster Co.* That headline, unlike the headlines here, was in and of itself prejudicial. Finally, although the First Circuit did not rely on the voir dire, this Court takes note of the fact that a majority of the jurors in that case had actually seen the prejudicial headline in question. Similarly, in *Henslee v. United States,* 246 F.2d 190 (5th Cir.1957), upon which defendant also relies, the misconduct occurred in the course of the trial under very suspicious circumstances.